UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                     :

MARC A. STARR,                          :

               Plaintiff,        :   Case No.: 12-cv-04023-SJF-AKT

                                       :

              -against-         :

                                     :

FIRSTMARK CORP.,                :

                                     :

             Defendant.      :

                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

 

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

 

TROUTMAN SANDERS LLP
Eric L. Unis
Adam S. Libove
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT .................................................................................................................... 4

I.   STARR FAILS TO MEET THE EXACTING STANDARD FOR THE
     EXTRAORDINARY INJUNCTIVE RELIEF SOUGHT ...................................... 4

     A.   Starr Is Bound By The Provisions Of The SPA ........................................ 5

     B.   Starr Fails To Demonstrate Any Irreparable Harm .................................. 7

     C.   The Cases Starr Cites On Irreparable Harm Are Inapposite ..................... 7

     D.   If This Application Were Granted, Firstmark Will Be Irreparably Harmed ........ 10

II.  STARR FAILS TO DEMONSTRATE A CLEAR LIKELIHOOD OF
     SUCCESS ON THE MERITS ............................................................................. 11

     A.   Starr Improperly Pleads A Claim For Injunctive Relief ........................ 11

     B.   Starr's Fraud Claim Is A Thinly-Veiled Claim For Breach Of Contract ............. 11

     C.   The SPA Bars Starr's Fraud Claim ........................................................ 13

     D.   Starr's Claim For Breach Of The Covenant Of Good Faith And Fair
          Dealing Is Deficient On Its Face ............................................................ 14

          1.   Delaware Law Applies To The Claim For Breach of The Covenant
               of Good Faith And Fair Dealing ................................................ 14

III. STARR HAS AN ADEQUATE REMEDY AT LAW ......................................... 15

IV.  BALANCING THE EQUITIES TIPS DECIDENTLY TOWARD FIRSTMARK ........ 16

CONCLUSION ............................................................................................................... 17

## TABLE OF AUTHORITIES

Page(s)

CASES

511 W. 232nd Owners Corp. v. Jennifer Realty Co.,
    98 N.Y.2d 144 (2002) ......................................................................................14

Ace & Co., Inc. v. Balfour Beatty PLC,
    148 F. Supp. 2d 418 (D. Del. 2001) .............................................................15

Adkins v. GMC,
    170 Fed. Appx. 184 (2d Cir. 2006) ......................................................... 11-12

Butvin v. Doubleclick, Inc.,
    No. 99 Civ 4727, 2001 U.S. Dist. LEXIS 2318 (S.D.N.Y. March 5, 2001) ..................... 14-15

Castlewood (US), Inc. v. Nat'l Indem. Co.,
    Case No. 06-CV-6842 (KMK), 2006 U.S. Dist. LEXIS 77634 (S.D.N.Y. Oct. 24, 2006) ........................................................................................5

Chicago School Reform Bd. of Trustees v. Diversified Pharm. Servs., Inc.,
    40 F. Supp. 2d 987 (N.D. Ill. 1999) (Mov. Br. at 12) ...............................9

Citibank v. Itochu Int'l,
    No. 01 Civ. 6007 (GBD), 2003 WL 1797847 (Apr. 4, 2003, S.D.N.Y.) ....................... 15, fn.9

Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,
    598 F.3d 30 (2d Cir. 2010) ....................................................... 4, 16 fn.10

In re Cogent, Inc. S'holder Litig.,
    7 A.3d 487 ........................................................................................15

Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.,
    No. 05 Civ. 9640 (PKL), 2009 U.S. Dist. LEXIS 30386 (S.D.N.Y. Apr. 6, 2009) ................14

Daiichi Seihan USA v. Infinity USA, Inc.,
    214 A.D.2d 487 (1st Dep't 1995) ..............................................................13

Data Mgmt. Internationale, Inc. v. Saraga,
    C.A. No. 05C-05-108, 2007 Del. Super. LEXIS 412 (Del. Super. Jul. 25, 2007) .......... 12, fn.7

Dunlap v. State Farm Fire & Cas. Co.,
    878 A.2d 434 (Del. 2005) .......................................................................15

Esaka v. Nanticoke Health Servs.,
    752 F. Supp. 2d 476 (D. Del. 2010) .............................................................6

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
    12 N.Y.3d 553 (2009) ................................................................................12

*Furchtgott-Roth v. Wilson*,
    09 Civ. 9877 (PKC), 2010 U.S. Dist. LEXIS 92507 (S.D.N.Y. Aug. 31, 2010).....................11

*Gilbert v. El Paso Co.*,
    490 A.2d 1050 (Del. Ch., 1984).............................................................14

*Great-West Investors LP v. Thomas H. Lee Partners, L.P.*,
    C.A. No. 5508-VCN, 2012 Del. Ch. LEXIS 2 (Del. Ch. Jan. 4, 2012) ..................12

*Hauspie v. Stonington Partners, Inc.*,
    945 A.2d 584 (Del. 2008) ....................................................................12

*Jarecki v. Shung Moo Louie*,
    95 N.Y.2d 665 (2001) .........................................................................13

*Lisa, S.A. v. Mayorga*,
    C.A. No. 2571-VCL, 2009 Del. Ch. LEXIS 115 (Del. Ch. June 22, 2009), aff'd, 993
    A.2d 1042 (Del. 2010) .........................................................................11

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*,
    107 F.3d 979 (2d Cir. 1997) (Mov. Br. at 11) ..............................................8

*Matsumura v. Benihana Nat'l Corp.*,
    465 Fed. Appx. 23 (2d Cir. 2012)...........................................................11

*McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.*,
    105 F.3d 1192 (8th Cir. 1997) (Mov. Br. at 12) ............................................9

*Mount Ararat Cemetery v. Cemetery Workers & Greens Attendants Union, Local 365*,
    975 F. Supp. 445 (E.D.N.Y. 1997) (Mov. Br. at 11) .......................................8

*Olde Discount Corp. v. Tupman*,
    805 F. Supp. 1130 (D. Del. 1992), aff'd, 1 F.3d 202 (3d Cir. 1993), cert. denied, 510
    U.S. 1065 (1994).................................................................................10

*Pinkert v. John J. Olivieri, P.A.*,
    C. A. No. 99-380-SLR, 2001 U.S. Dist. LEXIS 8133 (D. Del. May 24, 2001) ............ 12, fn.7

*Prudential Secs. v. Mills*,
    944 F. Supp. 625 (W.D. Tenn. 1996) (Mov. Br. at 12) .....................................9

*Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs.*,
    962 F. Supp. 385 (S.D.N.Y. 1997) ....................................................5, 6, 10

Reuters, Ltd. v. United Press Int'l, Inc.,
  903 F.2d 904 (2d Cir. 1990)..................................................................................5

Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.,
  616 A.2d 1192 (1992) .......................................................................................13

Rosenthal v. Rochester Button Co.,
  148 A.D.2d 375 (1st Dep't 1989) ......................................................................15

Semco, L.L.C. v. Ellicott Mach. Corp. Int'l,
  C.A. No. 99-1928, 1999 U.S. Dist. LEXIS 10710 (E.D. La. July 9, 1999) (Mov. Br. at
  12) ..................................................................................................................10

Tellium v. Corning Inc.,
  No. 03 Civ. 8487 (NRB), 2004 U.S. Dist. LEXIS 2289 (S.D.N.Y. Feb. 13, 2004)
  (Mov. Br. at 11) ................................................................................................8

Tom Doherty Assocs. v. Saban Enm't, Inc.,
  60 F.3d 27 (2d Cir. 1995).................................................................................4, 5

TriState Courier and Carriage, Inc. v. Berryman,
  C.A. No. 20574-NC, 2004 Del. Ch. LEXIS 43 (Del. Ch. Apr. 15, 2004) ...................... 12, fn.7

Viacom Int'l, Inc. v. Winshall,
  C.A. No., 7149-CS, 2012 Del. Ch. LEXIS 187 (Del. Ch. Aug. 9, 2012) ...................................6

Wilgus v. Salt Pond Inv. Co.,
  498 A.2d 151 (Del. Ch. 1985)............................................................................14

Winter v. Natural Resources Defense Council, Inc.,
  555 U.S. 7 (2008)................................................................................................4

Woodling v. Garrett Corp.,
  813 F.2d 543 (2d Cir.1987)...........................................................................5, fn.3

Wright v. Early Warning Sys.,
  C.A. No. 10-988-GMS, 2012 U.S. Dist. LEXIS 21719 (D. Del. Feb. 22, 2012) .................5, 6

**OTHER AUTHORITIES**

Contracts § 670 (3rd ed. 1969) ..........................................................................14

Defendant Firstmark Corp. ("Firstmark") respectfully submits this memorandum of law in opposition to the motion of plaintiff Marc A. Starr ("Starr") for a preliminary injunction.

## PRELIMINARY STATEMENT

Starr here seeks a preliminary injunction to enjoin an arbitration process that he undeniably agreed to when Firstmark purchased his business in 2011.  On August 13, 2012, the Hon. Joseph F. Bianco, U.S.D.J., denied Starr's request for a temporary restraining order. (Docket Entry No. 4).  It is respectfully submitted that the Court should likewise deny his request for a preliminary injunction, based on the plain lack of legal and factual merit to Starr's application.

As set forth below, the arbitration process that Starr and Firstmark agreed to should not be enjoined because Starr cannot meet the standard for preliminary injunctive relief established by the courts of this Circuit.  Starr's request for an injunction is a frivolous attempt at an "end run" around terms clearly set forth in the stock purchase agreement among Starr, Firstmark, and Centroid, Inc. ("Centroid"), the company purchased by Firstmark, dated as of March 4, 2011 (the "SPA").  Starr has failed entirely to make any demonstration that he will suffer irreparable harm in the absence of an injunction.  Starr has failed to demonstrate any likelihood of success on his claims, which have no support in law, and are contrary to the facts.  Starr contracted for the arbitration provision at issue that he now seeks to enjoin and Firstmark should not lose the benefit of its bargain due to Starr's baseless allegations.   At most, this matter is a dispute over accounting that can be addressed through the contractually mandated arbitration process. Starr's claims all relate to payments allegedly owed to him by Firstmark and in no way require the Court's intervention and the extraordinary relief sought.

- 1 -

## STATEMENT OF FACTS

A recitation of many of the relevant facts is set forth in the accompanying Affidavit of Theresa M. Riddle, sworn to on August 24, 2012 (the "Riddle Aff.").

In 2011, Starr sold his business, Centroid, to Firstmark, under the terms of the SPA. Consideration for that purchase included a $6,000,000 cash payment from Firstmark to Starr at closing.   The SPA, a copy of which is attached as Exhibit D to the Riddle Aff., additionally provided that Starr could potentially receive further payments if certain financial targets were met after closing (The "Interim Earn-Out").

According to the SPA, the Interim Earn-Out can only be triggered if a "Subsequent Financial Statement" demonstrates that Centroid ".... has an Earn-Out EBIT equal to or greater than $1,650,000 to either or both of the twelve-month periods immediately following the Closing....".   This target has not been met.   Pursuant to the SPA, Firstmark delivered a Subsequent Financial Statement to Starr on June 15, 2012 showing that the Earn-Out EBIT for the 12-month period ending February 29, 2012 was approximately $1.15 million.   A revised Subsequent Financial Statement was prepared, and delivered to Starr on July 11, 2012, showing an Earn-Out EBIT of approximately $1.09 million, again, below the threshold to trigger an Interim Earn-Out payment.

The SPA is quite clear on what Starr's remedy is if he believes that he is entitled to an Interim Earn-Out Payment.  Section 2.2(c)(iv) provides:

> Seller shall have sixty (60) days from the date Buyer delivers a Subsequent Financial Statement (each, an "Earn-Out Dispute Period") to deliver to Buyer a written dispute notice prepared by an independent regional or national accounting firm (the 'Earn-Out Dispute Notice").  The only item that may be disputed hereunder is whether the applicable Subsequent Financial Statement was prepared in accordance with GAAP.

Section 2.2(c)(vi) of the SPA further provides that:

> If Seller delivers an Earn-Out Dispute Notice to Buyer during the Earn-Out-Dispute Period, Seller and Buyer shall, for a period of fifteen (15) days from the date the Earn-Out Dispute Notice is delivered to Buyer (the "Resolution Period"), use their respective commercially reasonable efforts to resolve amicably the items in dispute; any items so resolved by the Parties in writing shall be binding upon each of the Parties.

The SPA then, at Section 2.2(c)(vii) provides for arbitration of any remaining dispute:

> If Seller and Buyer are unable to resolve all of the items in dispute during the Resolution Period, then, at the request of Buyer or Seller, Seller and Buyer shall refer in writing the items remaining in dispute to a nationally or regionally recognized independent accounting firm that performs audits of companies of similar size or larger than the Company and that is acceptable to both Seller and Buyer (the "Independent Accountant").

Rather than adhere to this clearly defined and legitimate procedure, Starr brought the present action and seeks preliminary relief, requesting that the Court enjoin the arbitration procedure. On August 14, 2012, after his request for a temporary restraining order was denied, Starr's counsel delivered a letter signed by Sam Rosenfarb, CPA, of Rosenfarb LLC, purporting to be an Earn-Out Dispute Notice.[1] (Riddle Aff., at ¶ 43.). The Parties are currently engaging in the dispute resolution process provided for in the SPA. Nevertheless, Starr has not withdrawn his application for preliminary relief, nor this action, with its sensational allegations that Firstmark "cooked the books," which Firstmark must now oppose.[2]

Starr's factual assertions concerning the Subsequent Financial Statements and his allegations purporting to support his claims for breach of the covenant of good faith and fair dealing and for fraud are incorrect. As set forth in the Riddle Aff., the Subsequent Financial

---

[1]  Firstmark, however, does not concede that Starr, or anyone acting on his behalf, has complied with the dispute resolution procedure, or that they have identified an arbitrable issue. These matters, however, are to be addressed through the SPA's arbitration procedure.

[2]  Firstmark reserves its right to seek payment of its attorneys' fees in connection with the present motion as it considers the present motion frivolous and an abuse of the judicial system.

20075985v5

Statements were prepared in accordance with GAAP and as contemplated under the SPA. Each of the various allegations of inconsistencies on the part of Firstmark do not withstand scrutiny. There is no basis for Starr's claim that Firstmark intentionally sought to deprive him of an earn-out payment. (Riddle Aff., at ¶ 20). Starr also claims that Firstmark represented to him that he would receive an Interim Earn-Out payment. This too is baseless. (Riddle Aff., at ¶ 18.).

## ARGUMENT

### I. STARR FAILS TO MEET THE EXACTING STANDARD FOR THE EXTRAORDINARY INJUNCTIVE RELIEF SOUGHT

Just as Starr failed to meet the high threshold necessary to obtain a temporary restraining order, Starr is similarly unable to make the requisite showing for a preliminary injunction. Ordinarily, a party seeking a preliminary injunction must demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)); see also Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). However, when the injunction sought is "mandatory" -- i.e., it requires an affirmative act or mandates a specified course of conduct that would alter the status quo, as in this case, -- the movant must satisfy a more rigorous standard requiring a "clear" or "substantial" likelihood of success on the merits. Tom Doherty Assocs. v. Saban Enm't, Inc., 60 F.3d 27, 33-36 (2d Cir. 1995); Roswell Capital Partners LLC v. Alternative Constr. Techs., No. 08 Civ. 10647 (DLC), 2009 U.S. Dist. LEXIS 7690, at *30 (S.D.N.Y. Jan. 30, 2009). The Second Circuit has cautioned that the "clear or substantial"

standard will only be "infrequently met" by moving plaintiffs. <u>Tom Doherty Assocs., Inc.</u>, 60 F.3d at 38.

In applying the test above, irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." <u>Reuters, Ltd. v. United Press Int'l, Inc.</u>, 903 F.2d 904, 907 (2d Cir. 1990) (internal citations and quotations omitted). Accordingly, "[t]he movant is required to establish not the mere *possibility* of irreparable harm, but that it is *likely* to suffer irreparable harm if relief is denied." <u>Castlewood (US), Inc. v. Nat'l Indem. Co.</u>, Case No. 06-CV-6842 (KMK), 2006 U.S. Dist. LEXIS 77634, at *13 (S.D.N.Y. Oct. 24, 2006) (citations and quotations omitted, emphasis in original). In this application, Starr has failed to meet any of the foregoing elements of the exacting standard, let alone demonstrate a "clear" or "substantial" likelihood of success.

### A. Starr Is Bound By The Provisions Of The SPA[3]

In this application, Starr seeks a judicial imprimatur on what is a clear end run around the terms of the contract he executed. Ignoring the unambiguous terms of the arbitration provision is contrary to controlling law and not supported by any of Starr's allegations.

"Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." <u>Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs.</u>, 962 F. Supp. 385, 388 (S.D.N.Y. 1997) (citing <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 10 (1984)). "Arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>Id.</u> at 389-390 (internal citations and quotations omitted); <u>accord</u> <u>Wright v.</u>

---

[3] The SPA is governed by Delaware law. (Compl., Exh. A., § 9.6). However, Second Circuit law, as the law of the forum, governs procedural issues. <u>See</u> <u>Woodling v. Garrett Corp.</u>, 813 F.2d 543, 552 (2d Cir.1987). Where useful to the analysis, New York law is also cited herein.

Early Warning Sys., C.A. No. 10-988-GMS, 2012 U.S. Dist. LEXIS 21719, at *7 (D. Del. Feb. 22, 2012).  "An agreement to arbitrate is valid and enforceable if the parties unambiguously express their intention to be bound by its terms. Courts will uphold an agreement to arbitrate even if one party had superior bargaining power." Wright, 2012 U.S. Dist. LEXIS 21719, at *8.[4] Thus, to circumvent the clear terms of the SPA, Starr is required to make "a showing of fraud, duress, mistake or some other compelling ground to invalidate [the] contract." Esaka v. Nanticoke Health Servs., 752 F. Supp. 2d 476, 481 (D. Del. 2010).

"Here, the agreement to arbitrate is valid and enforceable since the parties unambiguously expressed their intention to be bound by its terms." Wright, 2012 U.S. Dist. LEXIS 21719, at *8; (Compl., ¶ 72 alleging, inter alia, "Starr . . . consented to the dispute resolution procedure set forth in the SPA.").[5] Moreover, an arbitration procedure such as the one set forth in the SPA is recognized as a perfectly legitimate method by which parties may have an "earn-out" finally determined by accountants who have the knowledge and expertise to review complicated disputes over accounting matters. See, e.g., Viacom Int'l, Inc. v. Winshall, C.A. No., 7149-CS, 2012 Del. Ch. LEXIS 187, at *1 (Del. Ch. Aug. 9, 2012) (holding that, by clear terms of the parties' agreement, "resolution accountants" had power to determine earn-out). Further, as discussed in more detail below, Starr has made nothing near a showing of fraud, duress, mistake or some other compelling ground to invalidate the SPA.  The arbitration clause indisputably covers the issue of "whether the applicable Subsequent Financial Statement was prepared in accordance with GAAP." (Compl., Exh. A, 2.2(c)(iv)).  Indeed, Starr does not argue otherwise.  Thus, Starr is bound by the provisions of the SPA that he executed. See Reliance,

---

[4] Notably, Starr does not allege any asymmetry in bargaining power.  In fact, despite his claims that the dispute resolution procedure he agreed to is "unfair," he is a sophisticated party who was represented by counsel and financial advisors during the negotiations of the SPA. (Riddle Aff., at ¶¶ 6-13).
[5] Starr's Complaint, dated August 13, 2012, is referred to herein as "Compl."

962 F. Supp. 385 at 388 (citing <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840 (2d Cir. 1987)).

**B.      Starr Fails To Demonstrate Any Irreparable Harm**

Unable to claim that the dispute resolution provision does not cover the issue its plain language addresses, Starr argues, without citation to any relevant authority, that if this application is not granted, "he will be forced to participate in a dispute resolution procedure that does not address the gravamen of his claims against Firstmark.  Mr. Starr's consideration for the sale of his business will be eviscerated, and he will have to institute a wholly separate proceeding to recover against Firstmark for its bad faith."  (Mov. Br. at 11).  None of the foregoing bases provides any support for the extraordinary relief Starr seeks.

The fact that the dispute resolution procedure set forth in Section 2.2 of the SPA may not encompass all of Starr's purported claims is not grounds for enjoining the contractually agreed procedure.  Conspicuously absent from Starr's moving papers is any authority for the principle that litigating "piecemeal" somehow constitutes irreparable harm.  Significantly, Starr offers no evidence in his voluminous affidavit of how any consideration that he is owed will be harmed absent an injunction.  Indeed, since Starr has made his application, he has sought to initiate the dispute resolution procedure, and the parties are engaging in that procedure.  Lastly, Starr's argument that absent an injunction he will have to institute a wholly separate proceeding to recover against Firstmark is particularly unavailing because the Complaint in this action seeks money damages for breach of the covenant of good faith and fair dealing (Compl., ¶¶ 64-70) and fraud (Compl., ¶¶ 71-76).  Starr has already commenced a separate proceeding, this one.

**C.      The Cases Starr Cites On Irreparable Harm Are Inapposite**

All of the cases cited by Starr are distinguishable based on the fact that here, Starr **<u>expressly agreed</u>** to the very dispute resolution procedure that he asks this Court to enjoin.  In

- 7 -

Tellium v. Corning Inc., No. 03 Civ. 8487 (NRB), 2004 U.S. Dist. LEXIS 2289 (S.D.N.Y. Feb. 13, 2004) (Mov. Br. at 11), the movant was not a party to any of the agreements that contained arbitration provisions.  See id. at *1 ("Tellium did not sign any of these Agreements").  That is a far cry from the situation here, where Starr agreed in signing the SPA to the dispute resolution provision to which he now objects.

In Mount Ararat Cemetery v. Cemetery Workers & Greens Attendants Union, Local 365, 975 F. Supp. 445 (E.D.N.Y. 1997) (Mov. Br. at 11) this Court enjoined a pending arbitration because it was based on an expired collective bargaining agreement that did not provide that the arbitration provision was to survive termination.  See id. at 447 ("The dispute at issue here concerns the method of assignment and payment due to bargaining unit employees for duties performed on 14 May 1996 – five months after the agreement between Local 365 and Ararat expired.").  Starr does not claim, nor could he, that Section 2.2 of the SPA has expired.  Indeed, Section 7.1 of the SPA expressly provides that such provision survives the Closing.[6]

Starr's citation to Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979 (2d Cir. 1997) (Mov. Br. at 11) is similarly unavailing.  In that case, also involving a collective bargaining agreement, the court enjoined arbitration because the claimant union's members were expressly excluded from the scope of the arbitration clause.  See id. at 983 ("Article I . . .contains an express limitation to the scope of the arbitration clause in-so-far as it excludes from coverage under the agreement 'employees employed by cleaning and maintenance contractors,' except to the extent that such employees are covered by the provisions of Article II

---

[6]  Section 7.1 of the SPA, entitled "Survival" provides:

> All representations, warranties, covenants, and obligations in this Agreement and any other certificates or document delivered pursuant to this Agreement will survive the Closing until the termination of the applicable indemnification provisions contained in Sections 7.2 and 7.3 hereof with respect to such representation, warranty or covenant, provided, however, this Section 7.1 shall not be applicable to the Excluded Documents. (Compl., Exh. A., § 7.1).

of the Agreement." Further, the Court also found that the union members were not covered by the provisions of Article II.). Here, Starr cannot argue that he is excluded from the scope of the alternative dispute provision of the SPA.

Starr futilely cites to authority from various out of state jurisdictions for the non-controversial proposition that "compelled arbitration constitutes irreparable harm." (Mov. Br. at 12). None of the cases cited, however, involves a party seeking to enjoin an arbitration to which he expressly consented. In McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192 (8th Cir. 1997) (Mov. Br. at 12), the Eighth Circuit considered merely "whether a court or an arbitrator should determine whether the parties' commercial dispute is arbitrable." Id. at 1193. Because the arbitration agreement in question did not "clearly and unmistakably evidence[] the parties' intent to give the arbitrator power to determine arbitrability," the court determined that it should determine arbitrability. Id. at 1194. Notably, McLaughlin did not concern a situation where a signatory to an arbitration clause sought to enjoin the arbitration.

In Prudential Secs. v. Mills, 944 F. Supp. 625 (W.D. Tenn. 1996) (Mov. Br. at 12) and Chicago School Reform Bd. of Trustees v. Diversified Pharm. Servs., Inc., 40 F. Supp. 2d 987 (N.D. Ill. 1999) (Mov. Br. at 12), courts considered primarily the application of the doctrine of equitable tolling and the relevant statute of limitations. Determining that the defendant's claims were barred by the statute of limitations of the American Stock Exchange, the court in Prudential held that requiring the plaintiff to arbitrate untimely claims would constitute irreparable harm. See id. at 631. Similarly, in Chicago School, the parties' contract had a one-year statute of limitations that had already expired. See 40 F. Supp. 2d at 995. Accordingly, the court enjoined the arbitration because it was already untimely. See id. at 996. Here, by contrast, there is no issue of whether the claim subject to Section 2.2 of the SPA is timely.

Not only does Starr's citation to <u>Semco, L.L.C. v. Ellicott Mach. Corp. Int'l</u>, C.A. No. 99-1928, 1999 U.S. Dist. LEXIS 10710 (E.D. La. July 9, 1999) (Mov. Br. at 12) not support his position, it supports Firstmark's argument.  In <u>Semco</u>, the parties' construction contract included "a three step dispute resolution process: (1) provision of a written Dispute Notice and a 30 day resolution period; (2) non-binding mediation in Birmingham, Alabama; and (3) mandatory binding arbitration in the New Orleans area."  <u>Id.</u> at *2-3.  The defendant served the notice of dispute and filed a demand for arbitration but apparently skipped the second step, non-binding mediation.  <u>See id.</u> at *3.  As such, plaintiff SEMCO sought and the court granted a preliminary injunction enjoining the arbitration because the parties had not first participated in the 30-day resolution period or the mediation first required under their contract.  <u>See id.</u> at *3, *8.  Similarly here, Section 2.2 of the SPA requires the parties to "use their respective commercially reasonable efforts to resolve amicably the items in dispute."  (Compl., Exh. A., § 2.2(c)(vi)).

### D.    If This Application Were Granted, Firstmark Will Be Irreparably Harmed

If Starr's application is granted, Firstmark will be irreparably harmed because it will be denied its contractually-bargained for right to arbitrate the issue of whether the applicable Subsequent Financial Statement was prepared in accordance with GAAP.  The right to arbitrate is "protected by international, federal, and state law" the deprivation of which "constitutes irreparable harm."  <u>Paramedics Electromedicina Comercial Ltda v. GE Med. Sys. Info. Techs.</u>, Case No. 02 civ. 9369, 2003 U.S. Dist. LEXIS 26928, 37-38 (S.D.N.Y. June 4, 2003) (citing, <u>inter alia</u>, <u>Reliance Nat. Ins. Co. v. Seismic Risk Ins. Service, Inc.</u>, 962 F. Supp. 385, 391 (S.D.N.Y. 1997)); <u>see also</u> <u>Olde Discount Corp. v. Tupman</u>, 805 F. Supp. 1130, 1141 (D. Del. 1992), <u>aff'd</u>, 1 F.3d 202 (3d Cir. 1993), <u>cert. denied</u>, 510 U.S. 1065 (1994) ("loss of [plaintiff's] federal substantive right to arbitrate, should injunctive relief be denied, constitutes irreparable harm clearly distinguishable from purely economic loss[]").  Indeed, pursuant to Section 9.13 of

- 10 -

the SPA, "[t]he Parties agree[d] that irreparable damage would occur in the event any of the provisions of this SPA were not performed in accordance with the terms hereof . . . " (Compl., Exh. A, § 9.13). Thus, granting Starr an injunction will prevent *Firstmark* from exercising its rights under the SPA and irreparably harm Firstmark.

## II.   STARR FAILS TO DEMONSTRATE A CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS

### A.   Starr Improperly Pleads A Claim For Injunctive Relief

As a preliminary matter, "[a]n injunction is a form of relief, not a separate cause of action." Furchtgott-Roth v. Wilson, 09 Civ. 9877 (PKC), 2010 U.S. Dist. LEXIS 92507, at *15 (S.D.N.Y. Aug. 31, 2010); accord Lisa, S.A. v. Mayorga, C.A. No. 2571-VCL, 2009 Del. Ch. LEXIS 115, at *27 (Del. Ch. June 22, 2009), aff'd, 993 A.2d 1042 (Del. 2010). Accordingly, Starr's first "claim for relief" (Compl., ¶¶ 58-63) states no cause of action.

### B.   Starr's Fraud Claim Is A Thinly-Veiled Claim For Breach Of Contract

The gravamen of the Complaint is the allegation that Firstmark improperly prepared the Subsequent Financial Statements "to disguise the true nature of Centroid's performance" and to "deprive . . . Starr" of certain Earn-Out Payments. (Compl., ¶¶ 2, 39, 44, 66, 76). Such allegations do not state a claim for fraud because, at most, they allege a breach of the SPA and nothing more. See Matsumura v. Benihana Nat'l Corp., 465 Fed. Appx. 23, 29 (2d Cir. 2012) (noting "under Delaware law, it is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim."); Adkins v. GMC, 170 Fed. Appx. 184, 187 (2d Cir. 2006) (noting that if plaintiff had believed that defendant "breached the express terms of this contract, and/or the implied covenant of good faith and fair dealing underlying the contract, he should have brought a

breach of contract claim.").[7]  Significantly, Starr has *not* pleaded a claim for breach of contract in

an obvious effort to avoid the clear arbitration provision in the SPA.

Under Delaware law, "to state a claim for fraud a plaintiff must allege: (1) a false

representation, usually one of fact; (2) defendant's knowledge or belief that the representation

was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff

to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance

upon the representation; and 5) damage to the plaintiff as a result of such reliance." Hauspie v.

Stonington Partners, Inc., 945 A.2d 584, 586 (Del. 2008).  The law in New York is similar.  See

Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559 (2009) ("The elements of a

cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity,

an intent to induce reliance, justifiable reliance by the plaintiff and damages.").

Lacking from the Complaint is any allegation that Firstmark possessed an intent to

induce him to act or to refrain from acting.  According to the Complaint, "[t]he entire $1,324,773

amortization expense taken was incorrectly deducted from earnings for **the sole and improper**

**purpose of depriving Mr. Starr of post-Closing Earn-Out Payments.**"  (Compl., ¶ 35,

emphasis added; see also id., ¶ 44).  Thus, Starr alleges that Firstmark caused the Subsequent

Financial Statement to be prepared so as to deprive him of post-Closing Earn-Out Payments, *not*

to induce him to act or to refrain from acting.  Accordingly, Starr's fraud claim fails to allege one

of the necessary elements, see Great-West Investors LP v. Thomas H. Lee Partners, L.P., C.A.

---

[7] See also Pinkert v. John J. Olivieri, P.A., C. A. No. 99-380-SLR, 2001 U.S. Dist. LEXIS 8133, at *16(D. Del. May 24, 2001) ("As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort."); Data Mgmt. Internationale, Inc. v. Saraga, C.A. No. 05C-05-108, 2007 Del. Super. LEXIS 412 (Del. Super. Jul. 25, 2007) (citing Pinkert); TriState Courier and Carriage, Inc. v. Berryman, C.A. No. 20574-NC, 2004 Del. Ch. LEXIS 43 (Del. Ch. Apr. 15, 2004) (quoting Pinkert).

- 12 -

No. 5508-VCN, 2012 Del. Ch. LEXIS 2, at *29 (Del. Ch. Jan. 4, 2012), and therefore, Starr has failed to demonstrate a likelihood of success thereon.

### C.    The SPA Bars Starr's Fraud Claim

In any event, the SPA contains the following merger clause, which bars Starr's claim for fraud:

> This Agreement, including the Exhibits and Schedules hereto and any other documents executed and delivered pursuant to this Agreement, constitute the entire agreement and supersede all other prior agreements and understandings, both oral and written, among the Parties or any of them, with respect to the subject matter hereof.  No representation, promise, inducement or statement of intention has been made by any Party which is not embodied in or superseded by this Agreement or in the documents referred to herein, and no Party shall be bound by or liable for any alleged representation, promise, inducement on statement of intention not so set forth. (Compl., Exh. A., § 9.10 at 68).

A plain reading of the above language,[8] interpreted under Delaware law, bars Starr's claim for fraud.  To the extent New York law applies, New York courts strictly enforce such merger clauses. See Jarecki v. Shung Moo Louie, 95 N.Y.2d 665, 669 (2001) ("The purpose of a merger clause is to require the full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing"); Daiichi Seihan USA v. Infinity USA, Inc., 214 A.D.2d 487, 488 (1st Dep't 1995) ("Any attempt . . . to alter the plain meaning of the contract by alleged oral modifications fails as a result of the contract's integration clause").  Section 9.10 of the SPA expressly negates Firstmark's liability "for any alleged representation, promise, inducement on statement of intention not so set forth" in the SPA.  Thus, because Starr's claim is based upon alleged verbal assurances provided by

---

[8]   Delaware courts interpret clear and unambiguous contractual language according to its ordinary and usual meaning.  See Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1195 (1992).

representatives of Firstmark (Compl., ¶¶ 33, 72-74), Starr cannot demonstrate a likelihood of success.

### D. Starr's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Is Deficient On Its Face

The gravamen of Starr's claim for breach of the covenant of good faith and fair dealing is that Firstmark "made the calculations of the Earn-Out EBIT with the intent to avoid its obligations to Mr. Starr under the SPA." (Compl., ¶ 68); that such "calculations were prepared to prejudice Mr. Starr's rights and to avoid Firstmark's obligations to Mr. Starr under the SPA" (id., ¶ 69) and that "Defendant's calculations were prepared in bad faith, and deprived Mr. Starr of the consideration due to him under the SPA." (Id., ¶ 69).

The covenant of good faith and fair dealing implied in all contracts prevents either party from acting to destroy or impair the right of the other party to receive the benefit of the contract. See Wilgus v. Salt Pond Inv. Co., 498 A.2d 151, 159 (Del. Ch. 1985) (citing 5 Williston, Contracts § 670 (3rd ed. 1969); Gilbert v. El Paso Co., 490 A.2d 1050 (Del. Ch., 1984); accord 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153-154 (2002).

### 1. Delaware Law Applies To The Claim For Breach of The Covenant of Good Faith And Fair Dealing

Starr argues that because there is no "actual conflict" between the law of New York and the law of Delaware with respect to the implied covenant of good faith and fair dealing, New York law should apply to this claim. (Mov. Br. 14). This analysis, however, disregards well-settled law holding that breach of the implied covenant of good faith and fair dealing is a contractual cause of action, such that the parties' choice of law provision applies to the interpretation and enforcement of the contract. See Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., No. 05 Civ. 9640 (PKL), 2009 U.S. Dist. LEXIS 30386, at *32 n.14 (S.D.N.Y. Apr. 6, 2009); Butvin v. Doubleclick, Inc., No. 99 Civ 4727, 2001 U.S. Dist. LEXIS

- 14 -

2318, at *23 (S.D.N.Y. March 5, 2001) (explaining that a Delaware choice-of-law provision in contract also applies to implied covenant claim as "the implied covenant of good faith is a rule of interpretation rather than a separate obligation" (internal citations and quotations omitted)).[9]

Under Delaware law, "the essential elements of a claim for breach of the implied covenant of good faith and fair dealing ... [are] arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the contract.'" Ace & Co., Inc. v. Balfour Beatty PLC, 148 F. Supp. 2d 418, 426 (D. Del. 2001) (quoting Cantor Fitzgerald L.P. v Cantor, 2000 Del. Ch. LEXIS 43, at *50 (Del Ch Ct 2000), appeal dismissed 755 A.2d 387 (Del. 2000)). The covenant "cannot be used to circumvent the parties' bargain, or to create a free-floating duty . . . unattached to the underlying legal document. Thus, one generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement." Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 441 (Del. 2005).

Here, all of Firstmark's actions were expressly authorized by the SPA. Starr's remedy, if he disagrees with the Subsequent Financial Statement prepared by Firstmark, is to follow the procedures outlined in Section 2.2(c) of the SPA.

## III.    STARR HAS AN ADEQUATE REMEDY AT LAW

In addition to his failure to meet the other prongs of the exacting preliminary injunction standard, Starr is not entitled to the extraordinary injunctive relief he seeks here because he has an adequate remedy at law. See Rosenthal v. Rochester Button Co., 148 A.D.2d 375, 377 (1st Dep't 1989); In re Cogent, Inc. S'holder Litig., 7 A.3d 487, 513 (Del. Ch. 2010) (same).

---

[9]  Thus, Starr's citation to Citibank v. Itochu Int'l, No. 01 Civ. 6007 (GBD), 2003 WL 1797847 (Apr. 4, 2003, S.D.N.Y.) is inapposite because it was decided under New York law. The Citibank case is also factually distinguishable in that the accounting plan complained of as contrary to GAAP occurred before closing. See id. at *5. Here, by contrast, per the SPA, the Subsequent Financial Statement was issued after closing (Compl., ¶¶ 17, 20), and the SPA itself provides a remedy for any alleged non-compliance with GAAP. See Part I.A., supra.

Here, Starr asserts causes of action for fraud (Compl., ¶¶ 71-76) and breach of the covenant of good faith and fair dealing (id., ¶¶ 64-70) seeking more than $3.8 million in damages. These claims for money damages and the very pendency of this action undermine any argument that he lacks an adequate remedy at law.

## IV.   BALANCING THE EQUITIES TIPS DECIDENTLY TOWARD FIRSTMARK[10]

As discussed in Part I.D. above, if this application were granted, Firstmark would be irreparably harmed through the denial of its contractual right to arbitrate the issue of whether the applicable Subsequent Financial Statement was prepared in accordance with GAAP. Denial of a party's right to arbitrate constitutes irreparable harm. See Paramedics, 2003 U.S. Dist. LEXIS at 37-38.

Further, there can be no prejudice to Starr from proceeding with the arbitration to determine the accounting issue as he has already asserted claims for monetary damages in this action.

---

[10] In his moving brief, Starr does not even attempt to demonstrate the first part of the alternative second prong of the preliminary injunction standard, i.e., whether there are sufficiently serious questions going to the merits to make them a fair ground for litigation. See Citigroup Global Mkts., 598 F.3d 30 at 35.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that Starr's application be, in all respects, denied.

Dated: New York, New York
      August 24, 2012

                        Respectfully submitted,

                        TROUTMAN SANDERS LLP

                        By:_____
                            Eric L. Unis
                            Adam S. Libove
                        The Chrysler Building
                        405 Lexington Avenue
                        New York, New York 10174
                        (212) 704-6000

                        *Attorneys for Defendant*

- 17 -