UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MARC A. STARR,

                Plaintiff,

       -against-

FIRSTMARK CORP.,

                Defendant.
----------------------------------------------------------X

**OPINION & ORDER**
**CV-12-4023 (SJF)(AKT)**

FILED
IN CLERK'S OFFICE
US DISTRICT COURT EDNY
★ OCT 12 2012 ★
LONG ISLAND OFFICE

FEUERSTEIN, J.

I.    Introduction

On August 13, 2012, plaintiff Marc A. Starr ("plaintiff") filed: (1) a complaint against defendant Firstmark Corp. ("defendant"), pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(2), seeking, *inter alia*, to enjoin enforcement of an arbitration provision in the parties' stock purchase agreement ("SPA") and to recover damages for breach of the covenant of good faith and fair dealing and fraud; and (2) an application pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking (a) a temporary restraining order ("TRO") and (b) a preliminary injunction enjoining enforcement of the arbitration provision in the parties' SPA. On August 13, 2012, the Honorable Joseph F. Bianco, United States District Judge, *inter alia*, denied the branch of plaintiff's application seeking a TRO and scheduled a hearing on the branch of the application seeking a preliminary injunction to be held before me on September 5, 2012. On August 31, 2012, plaintiff filed an amended complaint asserting two (2) additional claims against defendant seeking damages for breach of the parties' Employment Agreement dated March 4, 2011 and tortious

1

interference with a prospective business advantage. By order dated September 4, 2012, I granted plaintiff's motion seeking an adjournment of the hearing on his preliminary injunction motion and rescheduled the hearing for October 17, 2012 at 11:15 a.m. For the reasons set forth herein, plaintiff's motion for a preliminary injunction is denied.

II. Background

A. Factual Background

Plaintiff is the former owner of Centroid, Inc. ("Centroid"), a New York corporation, (Amend. Compl., ¶ 3; Affidavit of Marc A. Starr in Support of Order to Show Cause and Temporary Restraining Order ["Starr Aff."], ¶ 1), which "manufactur[es] and assembl[es] electronic and electro-mechanical replacement parts for military applications, (Amend. Compl., ¶ 8). Defendant, through its four (4) wholly-owned subsidiaries, "manufactures and repairs parts and subassemblies used in aviation, automotive, industrial, radar, fire control, and communications systems aboard fixed wing and rotary aircraft, submarines, ships, missiles, military and commercial ground vehicles, medical transport vehicles, and in a variety of testing applications." (Affidavit of Theresa M. Riddle in Opposition to Motion for Preliminary Injunction ["Riddle Aff."], ¶ 4).

In April 2010, defendant approached plaintiff about acquiring Centroid. (Amend. Compl., ¶ 11; Starr Aff., ¶ 4; Riddle Aff., ¶ 6). According to plaintiff, in an e-mail dated January 17, 2011, Theresa M. Riddle ("Riddle"), the president and chief financial officer of defendant, "specifically represented to [him] that there would not be any post-Closing valuation adjustments related to the inventory acquired at Closing and otherwise assured [him] that he would make his Earn-Out [payment]." (Amend. Compl., ¶ 34, Ex. F; Starr Aff., ¶ 12; see also Riddle Aff., ¶ 16-18). In fact,

that e-mail indicated, in pertinent part:

> "There will be no post-acquisition inventory valuation adjustments related to the inventory acquired at Closing. The ending balance sheet (pre-acquisition) will be prepared on a GAAP basis and all adjustments to the valuation necessary to put that balance sheet on a GAAP basis will already be recognized in Centroid's profit prior to Closing (i.e., if the Closing inventory needs to be written up, that write-up will be recognized as a pre-Closing adjustment). [Defendant] will use the pre-Closing ending balance sheet as the post-acquisition opening balance sheet so there will be no impact on EBIT going forward of any valuation adjustments made to the inventory as a result of the transaction. * * *"

(Amend. Compl., Ex. F).

Defendant purchased Centroid from plaintiff pursuant to a SPA between plaintiff, Centroid and defendant dated March 4, 2011, (Amend. Compl., ¶ 4, Ex. A ["SPA"]), which, by its terms, is governed by and construed in accordance with the laws of the State of Delaware. (SPA ¶ 9.6).

Pursuant to the SPA, defendant agreed to buy all of the issued and outstanding capital stock of Centroid from plaintiff for: (a) a cash payment of six million dollars ($6,000,000.00); (b) post-Closing interim earn-out payments ("IEO payments"); (c) a final earn-out payment ("FEO payment"); and (d) a working capital adjustment. (SPA ¶ 2.2(a)-(d)). According to the SPA, the amount due to plaintiff in IEO payments and for the FEO payment (collectively, "EO payments") would be based upon Centroid's earnings before interest and taxes ("EBIT"). (SPA ¶ 2.2(c)). In order to determine the amount of Centroid's EBIT, the SPA required defendant to prepare and deliver to plaintiff by June 15, 2012 and June 15, 2013, respectively, special purpose financial statements ("Subsequent Financial Statements"), prepared in accordance with generally accepted accounting principles ("GAAP"), for each of two (2) twelve (12)-month periods ending on February 29, 2012 and February 28, 2013. (Amend. Compl., ¶¶ 17, 20; SPA ¶ 2.2(c)(i)). If

3

plaintiff disagreed with the contents of the Subsequent Financial Statements, the SPA required him to send defendant a written notice "prepared by an independent regional or national accounting firm" ("an EO dispute notice") within sixty (60) days from the date defendant delivered the Subsequent Financial Statement, i.e., by August 14, 2012. (Amend. Compl., ¶¶ 20, 55; SPA ¶ 2.2(c)(iv)). Pursuant to the SPA, the only dispute plaintiff can raise with respect to the Subsequent Financial Statements is whether they were "prepared in accordance with GAAP," (SPA ¶ 2.2(c)(iv)), and if plaintiff failed to deliver the EO dispute notice to defendant within the applicable sixty (60)-day period, the Subsequent Financial Statement "shall be deemed final and correct and shall be binding upon each of the Parties." (SPA ¶ 2.2(c)(v)).

On June 15, 2012, defendant delivered to plaintiff a Subsequent Financial Statement for the first twelve (12)-month period ended February 29, 2012, together with an EBIT calculation for that same period, showing an EBIT of one million one hundred fifty thousand dollars seven hundred twenty-six dollars and forty-three cents ($1,150,726.43), less than the one million six hundred fifty thousand dollar ($1,650,000.00) threshold amount necessary for plaintiff to receive an IEO payment. (Amend. Compl., ¶ 23, Ex. B; Starr Aff., ¶¶ 2, 8; Riddle Aff., ¶ 19). According to plaintiff, "[h]ad Defendant employed the accounting methods utilized by Centroid, or otherwise, had it merely accurately reported its earnings and expenses, it would have resulted in * * * [an] EBIT of approximately $2.4 million," thereby entitling plaintiff to an IEO payment. (Amend. Compl., ¶ 24).

On July 11, 2012, defendant delivered to plaintiff a revised Subsequent Financial Statement for the first twelve (12)-month period ended February 29, 2012, together with an EBIT calculation for that same period, as a result of "a material error in the valuation of Centroid's inventory as of

4

February 29, 2012." (Amend. Compl., ¶ 25, Ex. C; Starr Aff., ¶¶ 2, 9). According to plaintiff, "[t]he revised Subsequent Financial Statement was still materially inaccurate as it did not correct a massive misclassification of some $900,000 in profits as expenses and purported to show that the * * * EBIT was $1.09 million, less than the earlier reported * * * EBIT," (Amend. Compl., ¶ 26), and was still below the threshold amount necessary for plaintiff to receive an IEO payment. (Amend. Compl., ¶ 26, Ex. C). In addition, plaintiff alleges, *inter alia*, that the Subsequent Financial Statement "included a $1,324,773 amortization expense of intangible assets that was inconsistent with GAAP in that it failed to reflect the economic substance of the SPA-required Earn-Out calculation and lacked both comparability and consistency with Centroid's financials prior to its acquisition by Defendant * * * [and] misclassified $900,000 of profits as $900,000 expenses, which it included in the intangible assets that were amortized," (Amend. Compl., ¶¶ 33, 37, 40, 44, 50), "for the sole and improper purpose of depriving [plaintiff] of post-Closing Earn-Out Payments." (Amend. Compl., ¶¶ 36, 45, 51; Starr Aff., ¶ 14-17). Plaintiff further alleges that "[d]efendant acted contrary to its own representation in [Riddle's] January 17 [2011] Email that '[defendant] will use the pre-Closing ending balance sheet as the post-acquisition opening balance sheet so there will be no impact on [Centroid's] EBIT going forward of any valuation adjustments made to the inventory as a result of the transaction[,]' * * * [and] changed the accounting principles used to calculate * * * EBIT for the subsequent financial statement * * *." (Amend. Compl., ¶¶ 35, 38-39; Starr Aff., ¶ 13). According to plaintiff, the Subsequent Financial Statement "was prepared by Defendant with the intent of defrauding [plaintiff] out of Earn-Out[] [Payments] * * * totaling as much as $3.8 million." (Amend. Compl., ¶ 54; Starr Aff., ¶ 18, 20).

Pursuant to paragraph 2.2(c)(vii) of the SPA ("the arbitration provision"), in the event the

5

parties are unable to reach an agreement on the figures in the Subsequent Financial Statements within fifteen (15) days of plaintiff's EO dispute notice, (SPA ¶ 2.2(c)(vi)), they are required to refer the disputed items "to a nationally or regionally recognized independent accounting firm that performs audits of companies of similar size or larger than [Centroid] and that is acceptable to both [plaintiff and defendant] ("the Independent Accountant")," who shall resolve the dispute and deliver a written determination thereof within thirty (30) days after his or her engagement. (Amend. Compl., ¶¶ 21, 56; SPA ¶ 2.2(c)(vii)). The arbitration provision of the SPA expressly provides that the Accountant's decision "shall be final and binding upon the Parties and shall not be subject to judicial review." (Amend. Compl., ¶¶ 21, 56; SPA ¶ 2.2(c)(vii)). According to plaintiff, "[t]he scope of the [arbitration] provision in the SPA pertains solely to the issue of whether the Subsequent Financial Statement was prepared in accordance with GAAP." (Amend. Compl., ¶ 57; Starr Aff., ¶ 21). Plaintiff alleges, however, that his "dispute with Defendant is much broader than that[,] [and] [i]f he is forced to arbitrate the sole issue of whether the Subsequent Financial Statement was prepared in accordance with GAAP, he will be required to institute a wholly separate action with respect to Defendant's duplicity and bad faith in reducing the amount of the EBIT calculation and thereby defrauding [him] out of Earn-Out[s] [payments] totaling as much as $3.8 million." (Amend. Compl., ¶¶ 57-58; Starr Aff., ¶ 21).

By letter dated August 16, 2012, defendant, with whom plaintiff is still employed pursuant to an employment agreement dated March 4, 2011, (Amend. Compl., ¶ 62, Ex. J), advised him that it was placing him "'on leave with full pay and benefits effective immediately until the earlier of the conclusion of the litigation or the expiration of [his] employment agreement," in light of the allegations in plaintiff's complaint of bad faith and fraud on the part of defendant. (Amend.

6

Compl., Ex. I). Defendant demanded that plaintiff return to it his keys to the office, the building, his desk and his file cabinets, as well as any confidential information concerning Centroid in his possession, and instructed plaintiff "'not to enter upon Centroid's property or engage in any contact with Centroid's customers, vendors or employees * * *." (Amend. Compl., ¶ 61, Ex. I). According to plaintiff, defendant suspended him "in order to deprive him of his Earn-Out [payments], and [to] relieve Defendant of any obligation to pay such Earn-Out [payments]." (Amend. Compl., ¶ 65). Plaintiff alleges that since he "is the primary person responsible for sales at Centroid, and his performance in that sales capacity is essential for Centroid's continued success in its business, * * * [b]y placing [him] on leave and preventing him from working, Defendant, in effect, is preventing Centroid from achieving the [forecasted] earnings for the 12-month period ending February 28, 2013 * * *." (Amend. Compl., ¶ 66). According to plaintiff, since defendant is preventing Centroid from fulfilling the pre-condition required for Earn-Out payments to plaintiff, i.e., the achievement of certain earnings thresholds, "[d]efendant has waived its right to claim failure to meet such condition as a basis for refusing to pay" plaintiff the Earn-Out payments. (Amend. Compl., ¶¶ 68-69).

The Employment Agreement provides, in pertinent part, that plaintiff's employment can be terminated by defendant only upon: (1) his death, permanent disability, "dishonesty, fraud, embezzlement or willful misconduct," "breach of any material term of th[e] Agreement * * *," "unauthorized disclosure of confidential information * * *," "conviction of a felony or crime of moral turpitude or any other crime that constitutes a material adverse reflection upon the reputation or good standing of [Centroid]," "persistent pattern of conduct and/or omissions constituting his repeated failure to carry out the proper directions of the Board * * *," or "failure * * * to discharge

7

his duties hereunder in compliance with any rule or regulation of the Securities Exchange Commission applicable to him;" (2) Centroid's disbarment or suspension from doing business; or (3) expiration of the term of the Employment Agreement. (Amend. Compl., Ex. J ¶ 2.10).

B. Procedural Background

On August 13, 2012, plaintiff filed a complaint against defendant pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(2), seeking, *inter alia*, to enjoin enforcement of the arbitration provision in the parties' SPA and to recover damages for breach of the covenant of good faith and fair dealing and fraud, accompanied by an application seeking a TRO and a preliminary injunction enjoining enforcement of the arbitration provision in the SPA pursuant to Rule 65 of the Federal Rules of Civil Procedure. On that same date, Judge Bianco, *inter alia*, denied the branch of the application seeking a TRO and scheduled a hearing on the branch of the application seeking a preliminary injunction to be held before me on September 5, 2012.

On August 31, 2012, plaintiff filed an amended complaint against defendant asserting five (5) claims for relief seeking: (1) to enjoin enforcement of the arbitration provision in the SPA (first claim for relief); and (2) damages for breach of the covenant of good faith and fair dealing (second claim for relief), fraud (third claim for relief), tortious interference with prospective business advantage (fourth claim for relief) and breach of contract, i.e., the Employment Agreement (fifth claim for relief).

By order dated September 4, 2012, plaintiff's motion for an adjournment of the preliminary injunction hearing was granted and the hearing was rescheduled for October 17, 2012 at 11:15 a.m.

III. Discussion

   A. Standard for Injunctive Relief

In order to obtain a preliminary injunction, a plaintiff must demonstrate: (a) that "irreparable harm is likely in the absence of an injunction," Winter v. Natural Resources Defense Council, 555 U.S. 7, 22, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); (b) "either (1) likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief, UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc., 660 F.3d 643, 648 (2d Cir. 2011) (quoting Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (quotations and citation omitted)); and (c) "that the public's interest weighs in favor of granting an injunction," Red Earth LLC v. U.S., 657 F.3d 138, 143 (2d Cir. 2011). See Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc., — F.3d —, 2012 WL 3832285, at * 4 (2d Cir. Sept. 5, 2012); Oneida Nation of New York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24, 129 S.Ct. at 376; see also UBS Financial, 660 F.3d at 648. "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24, 129 S. Ct. at 376 (quotations and citation omitted).

"Generally, the district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when essential facts are not in dispute." Maryland Cas. Co. v. Realty Advisory Board on Labor Relations, 107 F.3d 979, 984 (2d Cir. 1997); see also Amaker v. Fischer, 453 Fed. Appx. 59, 64-5 (2d Cir. Dec. 20, 2011) (summary order). Here, the essential fact, i.e., the

9

fact that the arbitration provision in the SPA requires the issue of whether the Subsequent Financial Statement was prepared in accordance with GAAP to be finally determined by an independent accountant, is not in dispute. Accordingly, the hearing on plaintiff's motion for a preliminary injunction presently scheduled to be held before me on October 17, 2012 at 11:15 a.m. is hereby converted into an initial conference in this case, at which the parties are directed to appear with authority, or with someone with authority, to settle this matter.

1.  Likelihood of Success

"[A]rbitration is a matter of contract," Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010), and, as such, courts are required to enforce agreements to arbitrate "according to their terms." Id.; see also CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669, 181 L. Ed. 2d 586 (2012); AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745-46, 1748, 179 L. Ed. 2d 742 (2011).

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, is the substantive law applicable to any arbitration agreement within the coverage of the Act, see Vaden v. Discover Bank, 556 U.S. 49, 59, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009); Security Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 325 (2d Cir. 2004) (quotations and citation omitted), and "was designed to promote arbitration." Concepcion, 131 S. Ct. at 1749; see also McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 830 (2d Cir. 1988) (holding that the Act "reflects a congressional recognition of the desirability of arbitration as an alternative to the complications of litigation." (quotations, alterations and citations omitted)). The Act "requires courts to enforce the bargain of the parties to arbitrate * * * [and] reflects an emphatic federal policy in favor of arbitral dispute

10

resolution." Marmet Health Care Center, Inc. v. Brown, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012) (quotations and citations omitted); see also KPMG LLP v. Cocchi, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (2011). Any doubts concerning "the scope of arbitrable issues" should be resolved "in favor of arbitration." Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003) (quotations and citations omitted); see also AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).

9 U.S.C. § 2 provides, in relevant part, as follows:

> "A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Thus, any arbitration agreement affecting interstate commerce, including the arbitration provision in the SPA, is subject to the Act. Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998).

9 U.S.C. § 3, provides, in relevant part, as follows:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement * * *."

(emphasis added). Thus, the Act "requires a federal court to enforce arbitration agreements and to stay litigation that contravenes them * * * [and] affords no latitude for discretion." Burns v. New York Life Ins. Co., 202 F.3d 616, 620 (2d Cir. 2000); see also WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997); McDonnell Douglas, 858 F.2d at 830.

Although the Act does not expressly authorize federal courts to enjoin arbitration

proceedings, the Second Circuit has held that courts have such authority "at least where the court determines * * * that the parties have not entered into a valid and binding arbitration agreement * * * [i.e.,] where the court "doubt[s] the existence of a binding agreement to arbitrate." In re American Express Financial Advisors Securities Litigation, 672 F.3d 113, 140 (2d Cir. 2011). In addition, a court may stay the arbitration of any claim that is "not within the scope of an arbitration agreement." Id. In sum, "a federal court may enjoin an arbitration that the court determines is not otherwise valid." Id. at 140-41.

Plaintiff does not dispute that the arbitration provision in the SPA requires the issue of whether the Subsequent Financial Statement was prepared in accordance with GAAP to be submitted to an independent accountant for a final written determination. Since that provision of the SPA "manifest[] an intention by the parties to submit [a] certain dispute[] [i.e., the determination of whether the Subsequent Financial Statement was prepared in accordance with GAAP] to a specified third party [i.e., an independent accountant] for binding resolution," McDonnell Douglas, 858 F.2d at 830, it constitutes an "arbitration agreement" within the meaning of the Act. See id. ("It is * * * irrelevant that the contract language in question does not employ the word 'arbitration' as such. Rather, what is important is that the parties clearly intended to submit some disputes to their chosen instrument for the definitive settlement of certain grievances under the Agreement. * * * Similarly, it is not dispositive that the Agreements fail to term the independent [third party's] conclusions 'final' or 'binding' [so long as] the parties' intent in that regard [is] clear from the language of their contract." (quotations, alterations and citations omitted)). Since it is undisputed that at least plaintiff's claim challenging the Subsequent Financial Statement as not having been prepared in accordance with GAAP is covered by a valid and binding arbitration agreement in the parties' SPA,

plaintiff has not demonstrated a likelihood of success on the merits of his claim seeking to enjoin enforcement of the arbitration provision in the SPA (first claim for relief).[1]

2. Irreparable Injury

In any event, plaintiff has not demonstrated any irreparable injury absent a grant of preliminary injunctive relief. Plaintiff claims that he would be irreparably injured if he is required to arbitrate the issue of whether the Subsequent Financial Statement was prepared in accordance with GAAP because "he would have to bring a wholly separate action with respect to his broader claims of fraud and breach of the implied covenant of good faith and fair dealing." (Plf. Mem., at 12).

Although "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes irreparable harm for which there is no adequate remedy at law," UBS Securities, LLC v. Voegeli, 405 Fed. Appx. 550, 552 (2d Cir. Jan. 4, 2011) (summary order); see also Merrill Lynch Investment Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003); Maryland Cas. Co.,107 F.3d at 984-85, plaintiff expressly agreed to arbitrate the issue of whether the Subsequent Financial Statement was prepared in accordance with GAAP. "A party suffers no legally cognizable injury at all, let alone irreparable injury, by being compelled to engage in arbitration to which he had contractually agreed." Lawrence v. Wilder Richman Securities Corp., 417 Fed. Appx. 11, 14 (2d

---

[1] For the reasons set forth below, plaintiff's contention that there is a likelihood of success on the merits of his fraud and breach of the implied covenant of good faith and fair dealing claims is irrelevant for purposes of this motion, since it is clear that he must proceed to arbitration on at least one (1) of his claims, i.e., his claim that the Subsequent Financial Statement was not prepared in accordance with GAAP.

13

Cir. Sept. 16, 2010) (summary order).

The fact that the complaint presents multiple claims, some of which are arbitrable and some of which may not be, does not justify injunctive relief because "[t]he Act * * * require[s] that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." KPMG, 132 S. Ct. at 24; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (holding that arbitration agreements must be "rigorously enforce[d] * * * even if the result is 'piecemeal' litigation.") Since the Supreme Court has held that "[a] court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration," KPMG, 132 S. Ct. at 24, it follows that the court also may not enjoin an arbitration to which the plaintiff has contractually agreed because some of the claims presented may not be arbitrable. "If some claims are non-arbitrable, while others are arbitrable, * * * [courts] will sever those claims subject to arbitration from those adjudicable only in court." Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 20 (2d Cir. 1995). Accordingly, the possibility of judicial inefficiency or inconsistent judgments resulting from piecemeal litigation, i.e., arbitration of arbitrable claims and judicial review of related non-arbitrable claims, does not constitute irreparable harm. See, e.g. KPMG, 132 S. Ct. at 26 ("[W]hen a complaint contains both arbitrable and nonarbitrable claims, the Act requires courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."); Rush v. Oppenheimer & Co., 779 F.2d 885, 891 (2d Cir. 1985) ("[N]either efficiency nor judicial economy is the primary goal behind the arbitration act * * *. [A] district court may not, on considerations of

14

judicial economy, refuse to stay the proceedings before it in favor of arbitration."); Government Employees Insurance Co. v. Grand Medical Supply, Inc., No. 11 Civ. 5339, 2012 WL 2577577, at * 7 (E.D.N.Y. July 4, 2012) (holding that the Act precludes a court from "deny[ing] a party its contractual right to arbitrate because [it] believe[s] considerations of efficiency or the goal of avoiding inconsistent judgments should take precedence.")

Since plaintiff has not demonstrated either a likelihood of success on the merits of his claim seeking injunctive relief, or that any irreparable injury will result in the absence of injunctive relief, his motion seeking a preliminary injunction is denied.

III. CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure is denied. The hearing on the motion presently scheduled to be held before me on October 17, 2012 at 11:15 a.m. is converted to an initial conference in this action, at which the parties shall appear with authority, or with individuals with authority, to settle this matter.

SO ORDERED.

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: October 12, 2012
Central Islip, New York